All right, I'll let you pronounce your name so that I don't make a mistake. Go ahead. May it please the Court, Richard Petrie for the appellant, Shane Foster. Okay, Mr. Petrie, thank you. This is obviously a suit where the plaintiff is alleging that he was wrongfully arrest and there was a violation of the Fourth Amendment. In this case, though, we don't simply have a situation where Mr. Foster was arrested under a statute and we don't simply have a situation where Mr. Foster was arrested for activity that the Louisiana Criminal Code says is constitutionally protected and that we cannot regulate. We have a case where Mr. Foster was not arrested in a field or on a road or in a parking lot. We have a case where Mr. Foster was arrested in the sheriff's office where Mr. Foster is telling the sheriff, I am a Louisiana State Police Certified Concealed Handgun Instructor as far as what I did, having a gun entirely in my motor vehicle when I entered the school parking lot, constitutionally protected, and where the sheriff has the criminal code out and Mr. Foster is pointing to the provision in 14 colon 95.6, exception B5, that says that having a gun or a firearm entirely in a motor vehicle is constitutionally protected activity in the state of Louisiana. And here the sheriff's response was, well, we're going to make an example out of you and you're going to be in the newspaper tomorrow. In this case, as the court knows, Mr. Foster was arrested for violating 14 colon 95.6. Now that particular statute prescribes the altering or the removing of firearm free zone signage. It also defines what a firearm free zone is in the state of Louisiana. And the statute says that as far as a firearm free zone, we're talking about school campus, school bus, or an area within 1,000 feet of the campus. In this case, the sheriff has taken the position, after we filed our lawsuit, that well, perhaps that was the wrong statute, 95.6. Now there is another statute that is directly on point, which is 14 colon 95.2. And that statute deals with carrying a firearm on school property. And it has the same exception, in 95.2 it is C5, but it has the same exception that the 95.6 statute has. But in this case, the sheriff has taken the position, well, if we didn't have probable cause under 95.6, we had it under 14 colon 95, which is carrying a dangerous weapon. And then their alternative argument is, well, we have probable cause or arguable probable cause under the trespass statute, when Mr. Foster entered the school parking lot or when he later entered a private roadway. As far as whether there was probable cause or arguable probable cause under the 14 colon 95 statute, again, it's the illegal carrying of a dangerous weapon. The statute says the intentional possession or use of a dangerous weapon on school campus and this is, I'm sorry, this is section A5, on a school campus during regular school hours or on a school bus. Now there are two reasons that we believe that the sheriff did not have probable cause under 14 colon 95 A5. Number one is because of the language in the 95.6 statute and the 95.2 statute. And as far as the exceptions that we have talked about, we're not simply talking about an exception to that particular statute, but the wording is very important because the wording says in 95.6B5, an exception to a firearm-free zone is any constitutionally protected activity within the firearm-free zone, such as a firearm contained entirely within a motor vehicle. Same exception in 95.2C5. Any constitutionally protected activity which cannot be regulated by the state, such as a firearm contained entirely within a motor vehicle. And with that statutory language and a police officer, we don't expect a police officer to be a judge or a legal scholar. But the police officer is supposed to know what the statutory law is. And of course here, in this case, we had Mr. Foster actually pointing out the statutory provision to the sheriff. But in this particular case, though, we have the legislature with those two exceptions, the exceptions in 95.6 and 95.2 saying that as far as having a firearm entirely in a motor vehicle, that this is activity that is constitutionally protected in the state of Louisiana. And we, the Louisiana legislature, are saying that this is something that is not illegal in this state. This is something that we cannot regulate. Of course, counsel, you've already had the preface properly so that the police are not supposed to be judges and some of these questions may have to be resolved by judges. Kennedy, it seems to me the position of the district court, particularly if you're looking at 95A5, the exceptions you're talking about in .2 and .6 aren't under 95A5. The claim there would be intentional possession of a dangerous weapon on a school campus during regular hours. A question that perhaps a policeman on the street or even in the back in the police headquarters, sheriff, was this a sheriff or police? The sheriff's office perhaps should not be expected, even if you have a finger pointing at the statute, is how does this exception in two other subparts of this statute, which were not put, for whatever legislative reason, were not put in 1495, I'm not going to get the numbers right, probably, A5, do they really apply there or not? Is there any case that says they apply there or not? Maybe it would be an obvious answer once it's all sorted out in court, but is it sufficient to undermine probable cause at the time that this decision was being made? And it's an objective decision. Whatever legitimate basis there would have been, even if that statute was not contemplated at the time, can be used. Do you agree with that? I mean, do the officers actually, in your view, have to have announced exactly what statute would be the one and would they be bound by that statute? I would agree with that, Your Honor. So, I mean, it seems to me the question before us, and you're being good at acknowledging that, is to what extent was this sufficiently clear such as to vitiate probable cause? And at least there is a question, arguably, under 1495A5, of whether those exceptions apply, the exceptions being the same one, but separately numbered under .2 and .6. Your Honor, our argument is based on the wording of the exceptions in the two other statutes. I would agree with the position that perhaps Your Honor is suggesting, that if the two exceptions in 95.6 and 95.2 had simply said that as far as having a firearm entirely in a vehicle, that that does not apply to this particular statute, I would agree totally that there could be probable cause or arguable probable cause under the 1495 statute. Well, we only needed one exception then. It seems to me the legislature has already indicated that they saw a need to put it in more than one place, and what you're saying is putting it once would have been enough. So I just see a problem in the sheriff, at the time of arrest, being able to sort all this out when it's not as clear as it could be in the statute. Your Honor, as far as the exception in 95.6, it says it's activity that's constitutionally protected, which means that the legislature cannot regulate it. And it's a tad clearer in 95.2C5, where it says that it's constitutionally protected activity that cannot be regulated by the state. And again, as far as the statutory law, the sheriff is supposed to know what the statutory law is. He's not necessarily bound by whether or not there was perhaps some court interpretation or there was a disagreement by different judges. But as far as what the statutory law is, the sheriff is supposed to know that. Is he supposed to know what's constitutionally protected? I mean, we keep having Second Amendment cases all over the country, from the lower courts to the Supreme Court, arguing about pretty subtle nuances about the Second Amendment. But for purposes of qualified immunity, you're telling us that this officer should have perfect knowledge of what's constitutional? No, sir. And certainly, Louisiana has a very strong constitutional protection as far as the right to bear arms. However, our argument is based on the wording of the statute. That is, the statute, the legislature is saying, we consider this activity to be constitutionally protected, and we can't regulate it. While you still have — We cannot make it illegal. While you still have time, why don't you address the trespass issue? As far as the trespass issue, there was a footnote in the trial judge's ruling. It was one sentence, footnote 30, where the district court judge found that it was likely that Mr. Foster had committed trespass, or there was probable cause to arrest him for trespass for going into the school parking lot. I'm also aware that the sheriff has taken the position — Well, I was actually talking — excuse me, I don't mean to cut you off in mid-sentence, but I was talking about the private road. Oh, the private road? Okay. Your Honor, as far as — a few things. Number one is that we don't have a situation where someone is being arrested and does not give an explanation to the officer as to why he is there. Mr. Foster gave the explanation. And in this particular case, number one, it was not clear that it was a private roadway. Number two, as far as this is out in the country, the nearest house was perhaps 100 yards away. Mr. Foster was in the roadway for perhaps a minute, and the sheriff was following him, so the sheriff knows that Mr. Foster was in that roadway for a very brief period of time. Mr. Foster never turned off his car engine. He went down the roadway roughly 100 feet, turned around, stopped, and he stopped so that he could check out something on his cell phone. I think he was checking out Google Maps at that time. And as far as this type of setting, if you have a roadway, there are no enclosures, there is no signage saying that this is private property or no trespassing. We would suggest to the court that simply based on custom, and given where this occurred, that Mr. Foster had implied authority to enter the roadway for the limited purpose that he entered the roadway for. Well, and if he had, in fact, been charged for that and it had gone to trial, he would have been able to raise that with the judge or the finder of fact. But the question we have is whether there was probable cause for a reasonable officer to think that there was a violation. Your Honor, I would suggest to the court that if there was probable cause to have arrested Mr. Foster for trespass when he entered the roadway, then there are very few circumstances where a police officer could not find trespass because someone entered some piece of private property and did not have express authority to do so. And if the sheriff had arguable probable cause or probable cause to have arrested Mr. Foster for trespass with the roadway, then I would suggest there is a problem with that statute that needs to be addressed as far as the constitutionality of it. Let me ask you a question about the regular school hours. What's your authority for defining when the regular school hours are? Largely, the term regular, Your Honor, as far as the use of the word regular in that term, regular school hours, there is some Louisiana case law dealing with the duty to supervise where courts have talked about that a school had a duty to supervise a student after school hours, and the court will talk about regular school hours, and then also that duty to supervise after the regular school day or after school hours. There's also, Your Honor, there is the Louisiana compulsory attendance law, and it's cited in our brief where that particular statute makes reference to compulsory attendance by a student during regular school hours. And for us, that means when school is in session, and they always So that would carry over to the parking lot? That meaning Yes, ma'am. Yes, ma'am. In this particular case, and again, as far as what hours did the sheriff have, this wasn't simply a police officer who was rolling on the scene and saw students in the parking lot. The sheriff had just dropped his son off at the school, and he was the parent of a student at that school, so the sheriff knew when school started. And according to the testimony of Mr. Foster, he left the parking lot roughly 15 minutes before first bell at the school. So it's our position, certainly, as far as Mr. Foster being in that parking lot, that it was not during regular school hours, which is required under the 1495 statute. All right. Thank you, Mr. Petrie. You've saved time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. My name is Craig Frosh on behalf of the sheriff. I think that the discussion so far has pretty much framed the essential arguments here, and it all gets down to the probable cause determination. Not necessarily the one that was made by the sheriff, but whether there's arguable or probable cause to find that any statute, any criminal statute, had been violated. Obviously, the 1495.6, the only prohibition in that is the altering or destruction of a sign. So that was incorrect, because no sign was altered in this case. However, the facts that were known to the sheriff, which formed the basis for the arrest, were that Mr. Foster had been on school property with a weapon in the console of his Tahoe and had stayed there for anywhere from two minutes, I think, to ten minutes, depending on who you talk to. But I don't think that's significant. The significant part is he had a weapon on school property. And for that, you look at 1495.5A. And in that statute, it talks about, as Judge Clement pointed out, it talks about regular school hours, which under that statute is not a defined term. So we submit, Your Honors, that it would be reasonable for the sheriff or any law enforcement officer to presume that regular school hours would certainly be on a school day when students are at school, arriving to go to class, perhaps looking over notes, talking with other students, talking with teachers, perhaps, preparing for the school day. Or they might be arriving early for a meeting of a club or for band practice or any kind of regular school activity or for a conference with a teacher. Right. And hearkening back to my high school days, we actually had something that they called zero period, which was a period before regular classes started where they were teaching driver's education classes, elective classes. So it, and I'm not sure in this case if that happened, but any time that a student is on a campus, especially during Monday through Friday, where, you know, it's 15, 20 minutes before classes technically start, we submit would be regular school hours, or at least it would be reasonable to conclude that. But it wouldn't have made any sense for the legislature to have confined a statute protecting against the presence of weapons just to formal class hours when, in fact, if you have to be at school at 8 o'clock, you have to be on the campus arriving at some time before then. I would agree with that, and if you look at the purpose of the statute, at least one of the purposes of the statutes, I believe, would have to be the protection of children, teachers, faculty, and staff. And if that's the purpose of that, any time that a student, a teacher, faculty, or staff would be present on the campus, it seems to me that this statute should cover that time period, which would include the half an hour before classes when this activity took place. And whether that's the right interpretation or not, we're just talking about whether it's reasonable for the officer to so conclude. Exactly. Even if the officer didn't even think about that at the time. You know, and that's the status of the law, you know, is you look at anything. The important thing is the facts that the officer had available to him or knew. And the facts here are that Mr. Foster had a weapon in his car, and it was at least briefly parked in the school parking lot while students, faculty, and staff were present on a, quote unquote, school day, which I consider Monday through Friday, extracurricular activities we can set aside for now. So the sheriff knew that. And the test under the Devenpeck case and the other cases we have cited is whether those facts known by an officer would give rise to probable cause that any crime has been committed, not necessarily the one that was cited, and in this case, we believe, incorrectly cited. But would the exception apply to that, as opposing counsel has alleged? I'm sorry? Would the exception that you had a permit and that it was hidden in your glove compartment or contained somewhere, would that apply to that situation? I don't believe it does, because as the Court has pointed out, it appears not just once. It doesn't appear in the definitions. It does not apply to this entire section or chapter of the criminal code. It's listed in those two particular statutes, which address things that go beyond 1495. 1495 talks about the carrying of a weapon on a school campus during regular school hours or on a school bus, period. 1495.2, I believe, goes beyond that, and it talks about any time while on a school campus, school transportation, or at any school-sponsored function, athletic competitions, dances, parties, any extracurricular activities, or within 1,000 feet of any school campus. So that's much broader, and we would submit that in this much broader context, perhaps a legislature thought, well, we need to protect, because somebody could just be driving by on a road within 1,000 feet of a school campus, and we don't want to affect that, because that's not necessarily getting into the type of protection that we're concerned here with in 1495. Well, Counsel, the part of it, though, Mr. Petrie is certainly correct that this is not just in 1495.6. It actually is a clear statement that having a firearm contained entirely within a motor vehicle is a constitutionally protected activity within a firearm-free zone, and this is N95.6, which is basically, well, basically is incorrect, but it starts with a definition of what a firearm-free zone is, and then it has this, in a firearm-free zone, you have a constitutional right, Louisianans, to have a firearm. So then when you go to the statute you think does apply, 95 subpart 5A, you're talking about the same sort of firearm-free zones of schools, and 95.6 says you, that somebody like the plaintiff here has a constitutionally protected right, what do you say? Well, I say that, again, as with 1495.2, 1495.6 speaks of a firearm-free zone, and admittedly a school campus could be considered a lesser included area in a firearm-free zone, but 1495.6 also has within 1,000 feet. It's actually defined. A firearm-free zone is an area inclusive of any school campus. Yes. So we already know that when he was on this parking lot, so long as it was the campus, he was in a firearm-free zone. And he has a constitutionally protected right in a firearm-free zone to have a firearm within a motor vehicle. Now, it's true that's not stated in 95A, 5A, but it does refer to schools, firearm-free zone, a little bit of heavy lifting, maybe, to get you right back to constitutional right. Well, I think you are correct that there is a constitutional right at issue here, but I do not think that, and Mr. Petrie had said that they're relying on the statutory language. And I believe that these three statutes can be reconciled. And I think that because 95.2 and 95.6 have a broader scope, that perhaps the legislature's time, space, manner of carrying of firearms, they said, okay, in this, for a firearm-free zone, this broad area which encompasses a school campus and beyond, we're going to say clearly that this exception applies. However, we didn't say it in 1495, which is much more limited. It talks about a school campus and it talks about during school hours, regular school hours, and says for this, perhaps that constitutional right does apply and could be a defense to that, but it is not clearly set forth in this statute. I don't want to belabor the point, but here I am, I'm going to belabor it, I guess. If 95.6 says that in a school zone there is this right, how can 95A5A be more limited when it's talking about school zones? I mean, the statute itself may not cover as much, but both 95.6 and 95A5A, I may have too many letters in there, both are talking about school zones, the same school zones. And in a school zone under 6, you have the right, in a more limited statute, when it talks about school zones, and it can talk about Wal-Mart, too, but when it's talking about school zones, that same right arguably ought to apply. I just don't understand why that's more limited. Well, it's, and I don't understand, you know, how or why the legislature did this. What I'm trying to do is, from a statutory interpretation standpoint, trying to preserve what the legislature has put in the books, and I think that's the Court's duty. And to get to that, to say, because otherwise you're going to say 1495 is superfluous, and because it does not have an extension, it cannot, an exclusion, it cannot be enforced. Okay. Let's presume you lose these points. Frankly, I sort of smell a rat here. I don't think this arrest would have ever taken place if there had not been a friendship between Trey and the sheriff's son. So the fact that he's now coming up with what could very well be a valid charge, this trespass, even though it seems sort of flighty and insignificant to me, I don't I just don't see how you can justify, as an explanation now, when he was specifically Mr. Foster was specifically told that they wanted to make an example out of him. They put his mug shot in the newspaper. I mean, why would you, why are you now entitled to change the whole scenario and say, aha, it was trespass, let's try that as a defense? And certainly, Your Honors, it is an awkward position to be in. However, the cases that we have cited included in these cases are language that the motivation of the officer does not really matter if the facts that are known to him would support probable cause. I mean, we even have cases where officers have parked on the side of a road to entice a driver to drift slightly across the center line so that the officer could then stop the car for a traffic violation and thinking that there would be drugs or other contraband in the car when everybody knows that the officer didn't care about the center line violation but was only trying to cause the person to commit that violation as a pretext. Right. And I think that, you know, inching close to that would be the Dietrich case that counsel had cited in their brief where you had the two private investigators that were known to the police department as private investigators and they performed these courier services taking coins and change from the bank to a laundromat. And they were pulled over in the course of that and they had a concealed gun and the Ohio statute said that's, you can't carry a concealed weapon except if you are in the process of conducting your lawful business, blah, blah, blah. So in that case, the officers knew that these people were engaged in a legitimate exercise, a legitimate lawful purpose, and they arrested them anyway because they were, there was some bad motivation there on the police. Here, yes, the only reason why the sheriff was involved was because his son called him when he was called over to Trey's car. And Trey was very upset. He had seen a black Tahoe following him from his house into the school parking lot and nobody got out of the car. He didn't know who this person was. He didn't know what their intent was. He was very upset. The sheriff's son just happened to be walking past Trey's car at the time and Trey called him over and I don't know, I don't recall if he got in the car, if they just talked through the door and he said, look, this guy followed me here. I don't know what's up here. I don't know if he's going to harm, I don't know what the deal is. So the sheriff's son called the sheriff who had just exited the parking lot and he turned around and came back and he followed the guy and if you look in the deposition excerpts that were submitted, when the sheriff finally caught up to him and confronted him on that private roadway, he said, you don't go onto a school property, you know, following a kid. My kid goes to that school. So, yes, that was part of the motivation of the sheriff because he did not know why this man, who had no reason to be on school property, and then he finds out he's got a weapon in the car. Well, at that point, he's basically telling the guy, you don't trespass on school property. Right. So that would have been a valid reason to arrest him. And that wasn't the reason it was given until the litigation. It wasn't. And, you know, we submit that Mr. Foster is the one that brought up 1495.6 because he carried a copy in his back pocket. But back at the station, when the sheriff was talking with the administrator of the district attorney's office about 1496, because that's what Mr. Foster had told him about, some of the other deputies in the room, including Chris Ivey, who has been dismissed, said, well, why don't we get him on trespass? And he says, no, let's do this one because, and I think because the district attorney's office, and now he's not a lawyer, said, I don't have a problem with that arrest. I think you're good to go on that. So that's why they used 1495.6. Would I have given that same advice? Probably not. But that doesn't matter. What matters is, what did the sheriff know, and whether that factual scenario supports probable cause on any crime. Regardless of whether you can consider affirmative defenses, but it's not conclusive on the probable cause issue. And here, coming in cold with these statutes, I think that it's arguable that the sheriff would have had probable cause based on the facts he knew to make an arrest on 1495. There's an old saying in police departments and law enforcement agencies, whether we like it or not, the saying is, you can beat the rap, but you can't beat the ride. That's it. They can figure out a reason to bring you downtown. Right. And, you know, and that, 1495 is the basis of the lower court's ruling. The trespass was mentioned in a footnote and really was not part of the decision. The judge relied solely on 1495. Although, we had argued the other potential or possible charges. So I think that it all gets down to whether the judge was correct in determining that a reasonable police officer, armed with the knowledge that the sheriff had on that day, could reasonably have concluded that probable cause to make an arrest on any crime, footnote, including 1495.1, was present in that case. And we believe that the district court's determination is correct. We don't see where any of the authorities that have been cited would cause this court to reverse that. Getting into the fineries of what is protected by the Second Amendment here opens up a can of worms that, you know, an officer on the beat, even a sheriff, even an elected sheriff, does not have to exactly know whether that constitutional protection applies to this statute. And we submit that the lower court's ruling should be affirmed. Thank you. Okay. Mr. Petrie. Save time for rebuttal. Your Honor, just a few points. In addition to the exceptions in 95.2 and 95.6, there is also the Louisiana Concealed Handgun Permit statute, which is 40 colon 1379.3. And in subsection 11, it lists the different places where one cannot carry a firearm, even with the permit, places like a courthouse. Another place, though, listed where one cannot carry a handgun, even with a permit, is a firearm-free zone as defined by 95.6. Also in this case, and it's in the record, is as far as the school board's policy as to whether what Mr. Foster did was improper. At the time of this incident, the school board had a written policy on firearms saying that one cannot carry a firearm on school campus, school bus, within 1,000 feet of a school campus, subject to the exceptions in 95.2. Again, we think it clear that because of the exceptions dealing with constitutionally protected activity that the sheriff should have known that under 95, he did not have probable cause. One last thing that was a question as to what statutory protection there would have been for a youngster arriving at 7 o'clock for banned practice. And the Louisiana Criminal Code addresses that issue in 14 colon 95.2 because that statute goes to, again, within 1,000 feet of the campus, school campus, school bus, school transportation, and even for school-sponsored activities. One cannot have a firearm subject to the exceptions in the statute, including the C-5 exception for having a firearm entirely within a vehicle. One last point, if I may. As far as the facts of this case, a question that came up that was asked of Mr. Foster was, well, why didn't you notify the sheriff before you started your surveillance? And when Mr. Foster was given the assignment, he was told that there was a close personal  They had known each other for 40 years. In fact, Mr. Hargrave's wife was the chief financial officer in the sheriff's office. And one of the great arities in this case is that as far as the personal injury lawsuit that Mr. Hargrave had, it was against the Lake Arthur Police Department. We are sensitive to the challenges that police officers have out on the street. But we would suggest to the court that as far as this case, it does not present any of those challenges. All right. Thank you, Mr. Petrie. Your case and all of today's cases are under submission.